# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

XAVIER FREYTES-TORRES,
           Petitioner,

v.                                              Case No. 15-C-0247

BRIAN FOSTER, Warden,
Green Bay Correctional Institution
           Respondent.

## DECISION AND ORDER

Xavier Freytes-Torres petitions for a writ of habeas corpus under 28 U.S.C. § 2254.

## I. BACKGROUND

Following a two-day jury trial, Freytes-Torres was convicted in Brown County Circuit Court of felony intimidation of a victim, Wis. Stat. § 940.45(3), and first-degree sexual assault of a child under age 16 by use or threat of force or violence, Wis. Stat. § 948.02(1)(c). The Wisconsin Court of Appeals summarized the facts as follows:

> Freytes-Torres was a friend of the victim's mother. In January 2011, while her mother and her mother's boyfriend were in a bedroom at the boyfriend's residence, Freytes-Torres and the victim were in the living room watching a movie on the sofa. Freytes-Torres allegedly touched the victim's breasts and vagina under her clothes, and then pulled down her pants and had penis to vagina intercourse while he lay on top of her holding her down. The victim testified Freytes-Torres told her if she "snitched or anything" he would do something to her, which she interpreted as meaning he would kill her. This occurred when the victim was twelve years old. She testified she did not tell her mother because she was scared.
>
> A second assault allegedly occurred at the victim's family's apartment when she was home alone with her younger sister, who was asleep in her mother's bedroom. The victim was on the computer chatting with a friend and listening to music when Freytes-Torres came into the apartment

unannounced and without permission. He started talking to the victim and then grabbed her and pulled her into another room where he touched her and then had her lie on a bed where he removed her pants and had penis to vagina intercourse with her. As he did so, he held the victim's hands above her head. When the victim tried to scream for her sister, he covered her mouth. The victim stated Freytes-Torres stopped and left immediately when the phone rang and he could see from the caller identification that it was her mother.

A third alleged incident occurred when Freytes-Torres once again entered the apartment without permission. The victim said he touched her with his hands but she could not remember the specific places. She also thought he had sexual intercourse with her on the couch.

Two to three weeks after the third incident, the victim told her mother and then a social worker at school, who contacted police. Police subsequently seized the comforter from the bed where the victim said the intercourse occurred and obtained buccal swabs from the victim and Freytes-Torres. The comforter and buccal swabs were submitted to the crime lab and eight stains were located on each side of the comforter. Each stain was initially tested with a presumptive test for semen. All but one was negative. A cutting was taken from the stain that tested positive and DNA was consistent with both the victim and Freytes-Torres. Freytes-Torres was identified as the contributor to the single-source semen portion of the stain.

Freytes-Torres testified in his own defense. He denied having any type of sexual relations with the victim. He admitted the semen found on the comforter was his, but claimed it came from wiping his penis on the comforter after masturbating when recalling a moment when he saw the victim naked while changing clothes. He also claimed the victim had several motives for falsifying her testimony.

The jury found Freytes-Torres guilty of felony intimidation of a victim, and first-degree sexual assault of a child under age sixteen, by use or threat of force or violence, which occurred during the second incident at the family apartment. He was acquitted of the sexual assaults alleged in the first and third incidents, as well as two charges of burglary with intent to commit a sexual assault.

*State v. Freytes-Torres*, No. 2012AP2597-CRMN, slip op. at 2–3 (Wis. Ct. App. Aug. 12, 2014).

On direct appeal, Freytes-Torres's appellate counsel filed a no-merit brief with the Wisconsin Court of Appeals, and Freytes-Torres filed his own reply. The Wisconsin

2

Court of Appeals summarily affirmed the conviction. Freytes-Torres petitioned to the Wisconsin Supreme Court, but that court denied review.

In his federal habeas petition, Freytes-Torres raises three claims. First, he contends that comments and conduct of the prosecutor during the trial deprived him of his due-process right to a fair trial, and also that trial counsel was ineffective in failing to move for a mistrial based on the prosecutor's conduct. Second, he contends that defense counsel was ineffective in failing to retain an independent DNA expert. Third, he contends that defense counsel was ineffective in three other respects: failing to object to a jury instruction on use or threat of force or violence, failing to object to the court's failing to require the jury to determine the exact date on which the sexual assault occurred, and being generally unprepared for trial.

## II. DISCUSSION

### A. Comments and Conduct of the Prosecutor

Freytes-Torres contends that the prosecutor engaged in misconduct during two phases of the trial: defense counsel's direct examination of Freytes-Torres, and closing arguments.

During the state's case, it introduced evidence that Freytes-Torres's semen was found on the comforter for the bed on which, according to the victim's testimony, the second sexual assault occurred. When Freytes-Torres testified in his defense, he stated that the reason his semen was on the comforter was because, after he saw the victim naked, he masturbated on the floor next to the bed and wiped his penis on the comforter. Defense counsel then asked Freytes-Torres why he did not go to the bathroom to "relieve himself." ECF No. 12-2 at 81. At that point, defense counsel

3

objected to the prosecutor's demeanor. Outside the presence of the jury, the court heard arguments on the objection. Defense counsel argued that, during his direct exam, the prosecutor was sitting in his chair and smirking at the questions. Defense counsel argued that the jury could observe the prosecutor's conduct and that it conveyed to the jury that the prosecutor thought the testimony was unbelievable. Defense counsel asked the court to instruct the prosecutor to "knock it off," but he did not ask for a mistrial or a curative instruction. *Id.* at 84. In response, the prosecutor stated that he did not do anything prior to defense counsel's use of the phrase "relieve yourself." The prosecutor then admitted that at that point, he turned so that the jury could not see him and smiled at defense counsel.

The court clarified for the record that it "heard something" from the prosecutor. *Id.* at 85. According to the court, the prosecutor "turned his chair away from the jury, his back to the jury, and smiled at a statement as to a location of potentially where the defendant should have masturbated or why he didn't masturbate at one location instead of another." *Id.* The court noted that it was possible that some of the jurors saw the prosecutor smile, but it concluded that the prosecutor's smirk did not taint the jury. The court stated that it would not give a curative instruction but would simply instruct the jurors, as it would have in the ordinary course, "that they are the sole judges of the credibility, the believability, of all testimony." *Id.* at 86. Defense counsel agreed with the court's approach.

The second incident of alleged prosecutorial misconduct occurred during closing arguments. During his argument, the prosecutor repeatedly argued to the jury that the

4

victim was more credible than Freytes-Torres. Freytes-Torres contends that this argument amounted to the prosecutor's vouching for the victim's credibility.

The Wisconsin Court of Appeals resolved Freytes-Torres's claim of prosecutorial misconduct on the merits. Therefore, I may grant relief on this claim only if the court's decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). The petitioner does not contend that the court of appeals's decision was based on an unreasonable determination of the facts. The relevant Supreme Court law consists of *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974) and *Darden v. Wainwright*, 477 U.S. 168 (1986). Under these cases, a prosecutor's improper remarks or conduct can be grounds for overturning a conviction if the remarks or conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181; *Donnelly*, 416 U.S. at 643.

I begin with Freytes-Torres's argument that the prosecutor engaged in misconduct during closing arguments by vouching for the victim's credibility. There are two types of impermissible vouching: a prosecutor may not express his or her personal belief in the truthfulness of a witness, and a prosecutor may not imply that facts not before the jury lend a witness credibility. *United States v. Adkins*, 743 F.3d 176, 187 (7th Cir. 2014). However, the rule against improper vouching does not prevent a prosecutor from commenting on a witness's credibility, and the prosecutor may do this so long as the comments reflect reasonable inferences from the evidence adduced at

5

trial rather than personal opinion. *Id.*; *see also London v. Clements*, 600 F. App'x 462, 467 (7th Cir. 2015) ("Inferences drawn from the evidence, including inferences about witness credibility, are fair game for [a prosecutor's] closing argument."); *United States v. Alexander*, 741 F.3d 866, 871 (7th Cir. 2014) ("A prosecutor may properly comment on the credibility of a witness so long as the comment reflects reasonable inferences from the evidence rather than personal opinion."). A prosecutor may also, in the course of commenting on a witness's credibility, "appeal to jurors' common sense." *Alexander*, 741 F.3d at 871; *London*, 600 F. App'x at 467.

In the present case, all of the prosecutor's remarks during closing arguments about the victim's credibility were based on the evidence and appeals to the jurors' common sense. *See* ECF No. 12-2 at 134–54 & 178–87. The prosecutor never expressed a personal belief about the victim's credibility, and he did not make statements that implied evidence not before the jury lent the victim credibility. Accordingly, the prosecutor's remarks during closing do not support the argument that the Wisconsin Court of Appeals rendered a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court law.

With respect to the prosecutor's smirking during defense counsel's direct examination, the trial court observed what happened and determined that, because the prosecutor had turned his back to the jury before smirking, the jury probably did not see it. The court also determined that, in any event, the conduct was not so serious that it tainted the jury. Defense counsel did not think that the conduct was serious enough to warrant a mistrial or a curative instruction. Rather, he thought that the court's admonishing the prosecutor to behave more professionally during the rest of the direct

6

examination was sufficient. After defense counsel brought the matter to the court's attention, the prosecutor complied. Given this record, the Wisconsin Court of Appeals reasonably concluded that the prosecutor's single smirk during a question about where the defendant could have masturbated did not deprive the defendant of a fair trial.

Freytes-Torres also contends that his defense counsel was ineffective in failing to move for a mistrial after the prosecutor smirked at the question about masturbation. To succeed on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance resulted in prejudice. *See Strickland v. Washington*, 466 U.S. 668 (1984). To show prejudice, a defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694. Here, Freytes-Torres cannot show prejudice. As noted, the trial court found that the prosecutor's smirk did not taint the jury and that the court's ordinary instruction about the jurors' being the sole judges of credibility would be sufficient to cure any effect of the smirk. Thus, there is no reasonable probability that, had defense counsel moved for a mistrial, the court would have granted the motion.

## B. Trial Counsel's Failure to Retain an Independent DNA Expert

Freytes-Torres next contends that his trial counsel was ineffective in failing to retain an independent expert to review the crime lab's DNA results, perform an independent test of the DNA found on the comforter, and testify at trial. As stated above, to show that trial counsel was ineffective, Freytes-Torres must show that counsel's performance was deficient and that his deficient performance resulted in prejudice. *See Strickland v. Washington*, 466 U.S. 668 (1984). To show prejudice,

7

Freytes-Torres must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694. The Wisconsin Court of Appeals adjudicated this claim of ineffective assistance on the merits. Therefore, the standard of review in 28 U.S.C. § 2254(d) applies.

In rejecting this claim, the court of appeals determined that Freytes-Torres's contention that an independent DNA expert would have helped his case was speculative. The court also noted that Freytes-Torres admitted at trial that he wiped his penis on the comforter, and that there was thus no dispute at trial that the semen found on the comforter was his.

Construing Freytes-Torres's pro se submissions liberally, I conclude that he is arguing that an independent DNA expert could have assisted his defense in two respects. First, if the expert reviewed the state's analysis of the semen stain on the comforter before trial and identified reasons for thinking that the semen was not his, then Freytes-Torres would have changed his trial strategy. Instead of taking the stand and admitting to wiping his penis on the comforter, Freytes-Torres would have remained silent and relied on the independent expert's testimony to create reasonable doubt about whether the semen was his. Second, an independent expert could have testified about whether the source of the victim's DNA, which according to the state's expert was mixed with Freytes-Torres's DNA, was from a source other than vaginal secretions, such as skin cells. Testimony that the victim's DNA was from skin cells rather than vaginal secretions could have aided Freytes-Torres's defense by supporting his claim that he did not have vaginal intercourse with the victim but instead masturbated near the bed and wiped his penis on the comforter. The state's DNA expert testified that she

8

Case 2:15-cv-00247-LA   Filed 10/18/16   Page 8 of 12   Document 26

could not offer an opinion as to the source of the victim's DNA. She testified that it "could be from anywhere," including skin cells, saliva, urine, or vaginal secretions. *See* ECF No. 12-1 at 211.

The problem with Freytes-Torres's argument is that his claim that an independent DNA expert could have supported his defense in either of these respects is speculative. First, the state-court record contains nothing suggesting that an independent expert could have identified any problems with the state's DNA analysis or otherwise could have created reasonable doubt about whether the semen stain on the comforter contained Freytes-Torres's DNA. Second, the state-court record contains nothing suggesting that an independent expert could have identified the source of the victim's DNA. Indeed, the state's expert testified that DNA is the same throughout the body, ECF No. 12-1 at 199, and that she could not identify the source of the victim's DNA, *id.* at 211. Thus, nothing in the record suggests that Freytes-Torres was prejudiced by trial counsel's failure to retain an independent DNA expert. It follows that the Wisconsin Court of Appeals, in rejecting this ineffective-assistance claim as speculative, did not render a decision that was contrary to, or involved an unreasonable application of, *Strickland*. *See Finch v. Sec'y, Dep't of Corr.*, 643 F. App'x 848, 851–52 (11th Cir. 2016) (finding that habeas petitioner was not entitled to relief on claim that counsel was ineffective in failing to retain independent DNA expert where petitioner did not provide any evidence to support his speculative assertion that an independent expert would have testified in a way that helped his defense); *Martinez v. Tafoya*, 13 Fed.Appx. 873, 876–77 (10th Cir. 2001) (same); *Tafoya v. Tansy*, 9 F. App'x 862, 871 (10th Cir. 2001) (same); *see also Patel v. United States*, 19 F.3d 1231, 1237 (7th Cir. 1994) ("Where a

9

petitioner claims his trial counsel failed to call a witness, he must make a specific, affirmative showing as to what the missing evidence would have been, and prove that this witness's testimony would have produced a different result.").

## C. Remaining Ineffective-Assistance Claims

Freytes-Torres contends that his trial counsel committed three other errors. First, he contends that trial counsel rendered deficient performance by failing to object to the trial court's jury instruction on the "use or threat of force or violence," which is an element of the sexual-assault charge on which Freytes-Torres was found guilty. According to Freytes-Torres, the jury instruction created a presumption that had the effect of relieving the prosecution of its burden to prove this element of the offense. The Wisconsin Court of Appeals rejected this claim on the merits, and thus the standard of review in 28 U.S.C. § 2254(d) applies. I conclude that the court's conclusion was not contrary to, and did not involve an unreasonable application of, any Supreme Court decisions. The trial court instructed the jury that, to find Freytes-Torres guilty of the sexual-assault charge, it had to conclude that the state proved beyond a reasonable doubt all three elements of the offense. *See* ECF No. 12-2 at 127. The court then identified one of those elements as "the defendant had sexual intercourse with [the victim] by the use or threat of force or violence." *Id.* The court also instructed the jury that "the use or threat of force or violence may occur at any time before or as part of the sexual intercourse," *id.* at 127–28, which was an accurate statement of Wisconsin law, *see State v. Hayes*, 264 Wis. 2d 377, 391 (Ct. App. 2003). Thus, the court of appeals reasonably concluded that the jury instruction did not have the effect of relieving the

prosecutor of the burden of proving an element of the offense, and that counsel did not err in failing to object to the instruction.

Second, Freytes-Torres argues that counsel was ineffective in failing "to object to the prosecutor with respect to the exact dates that [the sexual assault] was committed." *See* Br. in Supp. at 22, ECF No. 16. The Wisconsin Court of Appeals rejected this claim on the merits, and thus the standard of review in 28 U.S.C. § 2254(d) applies. Freytes-Torres appears to be arguing that proof of an exact date was relevant because it was possible that he was on vacation or with his family in another part of the country on the day of the offense. *Id.* However, at trial, Freytes-Torres did not present an alibi defense of this nature. Rather, as noted, he admitted that he was in the victim's apartment but claimed that he did not have sexual intercourse with her. In any event, under Wisconsin law, a prosecutor is not required to prove the exact date on which a sexual assault occurred. *See Thomas v. State*, 92 Wis. 2d 372, 386 (1979). Thus, the Wisconsin Court of Appeals reasonably determined that trial counsel's failure to object to the lack of an exact date was not deficient performance.

Finally, Freytes-Torres argues that his trial counsel was generally unprepared. However, on direct appeal, the Wisconsin Court of Appeals independently reviewed the record and determined that it did not support Freytes-Torres's claim that trial counsel was unprepared. Freytes-Torres has not shown that this determination was contrary to, or involved an unreasonable application of, clearly established federal law, or involved an unreasonable determination of the facts. Accordingly, Freytes-Torres is not entitled to relief on this claim.

## III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED**. The Clerk of Court shall enter final judgment. Pursuant to Rule 11 of the Rules Governing § 2254 Cases, I find that the petitioner has not made the showing required by 28 U.S.C. § 2253(c)(2), and therefore I will not issue a certificate of appealability.

Dated at Milwaukee, Wisconsin, this 18th day of October, 2016.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge